UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TAIWAN CHAPMAN                                                                                   PLAINTIFFS

VERSUS                                                        CIVIL ACTION NO. 1:23-CV-284-TBM-RPM

SCOTT M. FAVRE PUBLIC ADJUSTER,                                                          DEFENDANTS
LLC et al

## REPORT AND RECOMMENDATIONS

Before the Court is Plaintiffs/Counter-Defendants Taiwan Chapman's and Jessie Haynes's (collectively, "Plaintiffs") [38] Motion for Sanctions.[1] Plaintiffs move the Court for sanctions against Defendant/Counter-Plaintiff Scott. M. Favre Public Adjuster, LLC ("SMFPA") pursuant to Fed. R. Civ. P. 11, the Mississippi Litigation Accountability Act ("MLAA"), and the court's inherent powers. The undersigned recommends the motion be denied without prejudice.

On October 25, 2023, Plaintiffs filed a Complaint against Defendants SMFPA; Cindy Lynn Favre, *as Executrix of the Estate of Scott Michael Favre, Deceased*; and Cindy Lynn Favre, *as Trustee of the Scott Michael Favre Revocable Trust*. Doc. [1]. SMFPA filed its Answer and Counterclaim against Plaintiffs on January 2, 2024. Doc. [16]. In Count 2 of the Counterclaim, SMFPA alleges a breach of the duty of good faith and fair dealing. *Id.* at 17. SMFPA alleges in pertinent part:

> [Plaintiffs] sent a letter to SMFPA dated August 8, 2023, attached as Exhibit 3 to their Complaint (the "Demand Letter"). The [Plaintiffs'] Demand [L]etter does not allege any breach of the Contract by SMFPA. Instead, the Demand Letter alleges [Plaintiffs'] knowledge of confidential information from another case obtained from attorneys for Rodriguez who now represent [Plaintiffs] in this lawsuit; the Demand Letter alleges a payment was due from SMFPA for contingency public adjuster fees SMFPA has not received from Polk County which is a fact [Plaintiffs] and their attorneys knew before filing this lawsuit.

---

[1] The District Judge referred this motion to the undersigned pursuant to Fed. R. Civ. P. 72(a). Doc. [113].

*Id.* at 18. Plaintiffs admit they sent the Demand Letter but deny the remaining allegations in the above paragraph. Doc. [24] at 4. Plaintiffs submitted this Demand Letter to SMFPA prior to retaining their attorneys. Doc. [42] at 2 n.1.

In the instant motion, Plaintiffs take issue with the allegations made against their attorneys in Count 2 of the Counterclaim.[2] As previously stated, Plaintiffs seek sanctions under Rule 11, the MLAA, and the court's inherent powers. "Rule 11 is designed to 'reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions.'" *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 263 (5th Cir. 2007) (quoting *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 870 (5th Cir. 1988) (en banc)). "Along that line, attorneys certify to the best of their knowledge that 'allegations and other factual contentions [submitted to the court] have evidentiary support.'" *Id.* at 263–64 (quoting Fed. R. Civ. P. 11(b)(3)). Additionally, the MLAA provides as follows:

> [T]he court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court . . . finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification . . . .

Miss. Code Ann. § 11-55-5(1). "A claim is without substantial justification when 'it is frivolous, groundless in fact or in law, or vexatious, as determined by the court.'" *Payne v. Univ. of So. Miss.*, 681 F. App'x 384, 389 (5th Cir. 2017) (quoting Miss. Code Ann. § 11-55-3(a)). "Furthermore, a claim is frivolous 'only when, objectively speaking, the pleader or movant has no hope of success.'" *Id.* (quoting *McBride v. Meridian Pub. Imp. Corp.*, 730 So.2d 548, 554 (Miss. 1998)). Lastly, "[f]ederal courts possess certain 'inherent powers,' . . . 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co.*

---

[2] Plaintiffs also have filed a Motion for Partial Summary Judgment as to Count 2 of the Counterclaim, which is pending before the District Judge. Doc. [36].

*v. Haegar*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). One permissible sanction is an assessment of attorney's fees such as "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* (quoting *Chambers*, 501 U.S. at 45). For the reasons explained below, the Court considers whether sanctions are warranted only under Rule 11.

First, it is unclear whether the MLAA applies to this case. Neither party addresses this question. The MLAA applies to "any civil action commenced or appealed in any court of record in this state." Miss. Code Ann. § 11-55-5(1). The Mississippi Supreme Court has held that the MLAA does not create an independent cause of action, but "create[s] an additional avenue for sanctions," augmenting Mississippi's Rule 11 sanctions. *Rose v. Tullos*, 994 So.2d 734, 738 (Miss. 2008); *see Stuart v. Estate of Roger G. Stuart, Sr.*, No. 1:15-CV-431, Order Denying Motion for Attorney's Fees and Costs, Doc. [42] at 4–6 (S.D. Miss. Oct. 6, 2016). "A district court may award sanctions under state law in cases originally filed in state court but removed to federal court." *Payne v. Univ. of So. Miss.*, No. 1:12-CV-41, 2015 WL 3549862, at *4 (S.D. Miss. June 5, 2015) (citing *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000)). This case was not originally filed in state court and removed to federal court; rather, it was originally filed in federal court. Doc. [1]. The Court is aware that this is a diversity action and that several cases from the Southern and Northern Districts of Mississippi have applied the MLAA in diversity actions. *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14-CV-78, 2017 WL 1088095, at *2 (S.D. Miss. Mar. 22, 2017) (collecting cases). But if the MLAA "provides only a procedural rule, it would not apply to pleadings filed in federal court." *Jesus v. Lamar Co.*, No. 1:22-CV-209, 2022 WL 10585511, at

3

\*3 (S.D. Miss. Oct. 18, 2022); *see Tompkins*, 202 F.3d at 787; *Moore v. Oliver*, No. 3:17-CV-408, 2018 WL 5289906, at \*3 (S.D. Miss. Oct. 24, 2018).  The Court declines to assume the MLAA applies to this case.  As such, the Court finds Plaintiffs fail to demonstrate the MLAA applies.

Second, the court's inherent powers are only "available as a remedy in extreme cases." *Garcia v. Fed. Home Loan Mortg. Corp.*, No. 3:20-CV-1458, 2022 WL 4007984, at \*9 (N.D. Tex. Sept. 2, 2022).  Therefore, "they must be exercised with restraint and discretion." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).  "[T]he threshold for the use of inherent power sanctions is high." *Dawson v. United States*, 68 F.3d 886, 895 (5th Cir. 1995) (quoting *Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995)).  To impose sanctions under its inherent power, a court must make a specific finding of bad faith.  *Id.* (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).  Moreover, the court's inherent power should be used to fill the gap "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process." *Human Rights Def. Ctr. v. United States Park Police*, 126 F.4th 708, 718 (D.C. Cir. 2025) (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)).  "[T]he court ordinarily should rely on the Rules rather than inherent power." *Chambers*, 501 U.S. at 50.  Because Plaintiffs assert Rule 11 as a basis for sanctions, the Court analyzes whether sanctions are warranted under that Rule only and declines to exercise its inherent powers.

Moving on, the Court observes the present issue stems from an alleged violation of a confidentiality provision to the settlement agreement reached in a separate case.  *See Estate of Rolando Rodriguez By and Through Rodriguez v. Scott M. Favre Public Adjuster, LLC*, No. 1:21-CV-125, Agreed Judgment of Dismissal, Doc. [173] (S.D. Miss. Feb. 8, 2023).  In Count 2 of the Counterclaim, SMFPA implies Plaintiffs obtained confidential information—the *Rodriguez* settlement amount—from Rodriguez's attorneys, who now represent Plaintiffs in this lawsuit.

4

Doc. [16] at 18.  But if the settlement amount was intended to be confidential, it no longer is.  It now has been divulged to the public by the parties' filings in this lawsuit.[3]  *See, e.g.,* Doc. [1-3]; [36-1]; [36-2]; [38-1]; [38-2]; [49-1]; [50-2]; [58]; [60]; [60-2]; [63-1]; [63-2]; [64-2]; [64-3]; [65-2]; [65-3]; [66-1]; [68-1]; [69]; [72]; [72-4].  For instance, in response to the instant motion, SMFPA says the "terms and amount of the settlement were confidential" but in the same sentence discloses the settlement amount.  Doc. [60] at 1.

Nevertheless, the present issue before the Court is whether SMFPA should be sanctioned for its allegedly false allegations in Count 2 of its Counterclaim.  Plaintiffs argue that SMFPA makes false and unwarranted claims, SMFPA knew the claims were false and unwarranted when made, and SMFPA refused to withdraw the claims after being provided proof the claims were false and unwarranted.  Doc. [42] at 2.  Specifically, SMFPA was provided proof the *Rodriguez* settlement amount was relayed to Plaintiffs by an SMFPA employee and not Rodriguez's attorneys who are now Plaintiffs' attorneys.  *Id.*  This proof was a recorded conversation between Plaintiffs and Sarah Lebeau of SMFPA on June 19, 2023, during which Lebeau told Plaintiffs the *Rodriguez* settlement amount.  Doc. [38-1] at 1; [38-2] at 2; [60-2] at 2; [68-1] at 35.  In her affidavit, Chapman states this was the first time she learned of the *Rodriguez* settlement amount.  Doc. [38-2] at 2.

SMFPA does not dispute Lebeau told Plaintiffs the *Rodriguez* settlement amount.  SMFPA says "[i]t's true that Sarah Lebeau told [Plaintiffs] in their telephone conference on June 19, 2023," the amount that "SMFPA paid . . . to settle the Rodriguez Case."  Doc. [60] at 2; [69] at 2.  However, SMFPA takes the following position:

> A jury could reasonably infer [Plaintiffs] were being dishonest during the June 19, 2023, recorded telephone conference by remaining silent of their knowledge that the Rodriguez settlement amount was confidential and by making up statements that "the last time [we] talked with Scott [Favre]" before he died, he stated SMFPA

---

[3] Exhibit 3 to Plaintiffs' Complaint contains an attempted redaction of the settlement amount; however, the settlement amount is still legible.  Doc. [1-3].

5

> paid [a certain amount] to settle the Rodriguez Case, knowing Scott Favre was not alive to challenge any such statements.

Doc. [60] at 2–3; [69] at 4. Lebeau's affidavit states, "I now feel that the conversation that I had with [Plaintiffs] was directed by [Plaintiffs] in a way to get me to say an amount for the Rodriguez settlement because they knew that the settlement was confidential." Doc. [60-2] at 2.

SMFPA's attorney sent an email to Plaintiffs on January 19, 2023, which states that the *Rodriguez* case settled and "the terms are confidential." Doc. [60-1]. Although the settlement amount was not disclosed to Plaintiffs in this email, this evidence shows Plaintiffs knew or should have known the *Rodriguez* settlement was confidential as early as January 19, 2023. At the time of the conversation on June 19, 2023, Lebeau did not know the *Rodriguez* settlement was confidential. Doc. [60-2] at 2. However, she apparently knew the *Rodriguez* settlement amount as she was the SMFPA employee tasked with preparing the settlement checks.[4] *Id.* Therefore, SMFPA contends, at the time of Plaintiffs' conversation with Lebeau, Plaintiffs knew the *Rodriguez* settlement was confidential but did not know the settlement amount; so, they remained quiet about this and made up statements to solicit the actual settlement amount from Lebeau. Doc. [60] at 2–3; [69] at 2, 4.

It is unclear if SMFPA is now implying Plaintiffs' attorneys induced this alleged dishonesty. Regardless, Plaintiffs represent the conversation on June 19, 2023, "occurred prior to Plaintiffs ever contacting their attorneys." Doc. [71] at 2.

In response to the instant motion, SMFPA attempts to justify the allegations made against Plaintiffs in Count 2 of the Counterclaim. Yet, SMFPA completely fails to address its allegations

---

[4] In her affidavit, Lebeau states that, during the conversation with Plaintiffs on June 19, 2023, Plaintiffs told her what they thought was the *Rodriguez* settlement amount, but she "felt that number was not right based on the settlement checks that [she] was instructed to mail" and therefore looked up the settlement checks to verify. Doc. [60-2] at 2. However, Lebeau states that she was not instructed to prepare and mail the second settlement check until July 2023, a month after her conversation with Plaintiffs.

made against Plaintiffs' attorneys.  By filing Count 2 of the Counterclaim, counsel for SMFPA certified to the best of their knowledge, information, and belief that the factual contentions made against Plaintiffs' attorneys have evidentiary support or will likely have evidentiary support after reasonable opportunity for further investigation or discovery.  Fed. R. Civ. P. 11(b)(3).  But SMFPA fails to provide evidentiary support for these contentions.  SMFPA cites to Chapman's deposition as support, but the excerpt of Chapman's testimony does not support the contention that Plaintiffs learned of the *Rodriguez* settlement amount from their attorneys.  Doc. [69] at 3.  In fact, SMFPA was provided with evidence showing Plaintiffs learned of the *Rodriguez* settlement amount from Lebeau in June 2023, which occurred prior to Plaintiffs ever contacting their attorneys.  SMFPA does not dispute this.  Doc. [60] at 2; [69] at 2.  It follows then that SMFPA would need evidence showing Plaintiffs' attorneys disclosed the *Rodriguez* settlement amount to Plaintiffs at some point prior to the conversation with Lebeau in June 2023.

Counsel for SMFPA are entitled to zealously represent the interests of their client, but that zeal does not extend to making unsupported and haphazard accusations against opposing counsel. *Bishara Dental v. Morris Lendais Hollrah & Snowden PLLC*, No. 4:20-CV-3079, 2021 WL 2954188, at *5 (S.D. Tex. July 14, 2021).  Although the Court has grave concerns with respect to SMFPA's allegations made against Plaintiffs' attorneys, the Court cannot impose sanctions here unless Plaintiffs strictly complied with Rule 11.  "[S]trict compliance with Rule 11 is mandatory." *In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008).  Rule 11(c)(2) "requires that a motion for sanctions 'must be served' on the opposing party and 'must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service within another time the court sets.'" *Uptown Grill, L.L.C. v. Cameliia Grill Holdings, Inc.*, 46 F.4th 374, 387–88 (5th Cir. 2022).  "This 'safe harbor' provision in Rule

11 is a mandatory prerequisite for a Rule 11 motion." *Id.* at 388. Among other things, the "safe harbor" provision requires identicality, meaning the motion served must be identical to the motion filed. *Id.* at 389. "To establish 'identicality,' the party seeking sanctions should append to its *filed* motion the motion it *served* on the opposing party." *Suanphairin v. Ataya*, No. 23-3346, 2024 WL 4289573, at *11 (E.D. La. Sept. 25, 2024); *see Girod LoanCo, LLC v. Klein*, No. 24-CV-2366, 2024 WL 4969717, at *3 (E.D. La. Dec. 4, 2024) (denying a motion for sanctions where the court could not confirm the identicality requirement had been met); *Horton v. Tex. Fed'n for Children PAC, Inc.*, No. 3:22-CV-2736, 2024 WL 2754042, at *3 n.2 (N.D. Tex. May 29, 2024) (noting the defendant's motion "fails to comply with Rule 11(c)(2)'s 'safe harbor' provision to the extent that [the defendant] has not appended the motion served on [the plaintiff]; the court cannot confirm whether the motion served and the motion filed are identical"). To the extent the motion was served on SMFPA, Plaintiffs did not append it to its filed motion.

The Court recommends denying Plaintiffs' Motion for Sanctions because Plaintiffs fail to demonstrate strict compliance with Rule 11(c)(2)'s mandatory "safe harbor" provision. Plaintiffs do not address whether they complied with the "safe harbor" provision. Additionally, there is no indication the motion was served on SMFPA under Rule 5 at least 21 days before the motion was filed. *See* Fed. R. Civ. P. 11(c)(2). Finally, the Court is unable to confirm whether the motion served and the motion filed are identical. For these reasons, the undersigned recommends Plaintiffs' Motion for Sanctions be denied without prejudice.

## **RECOMMENDATION**

The undersigned recommends that Plaintiffs/Counter-Defendants Taiwan Chapman's and Jessie Haynes's [38] Motion for Sanctions be denied without prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED this the 20th day of February 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE